**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: VIOLA TRUSTY | : | Chapter 13 |
| Debtor(s) | : | |
| | : | Bky. No. 06-15767ELF |
| | : | |
| VIOLA TRUSTY | : | |
| WILLIAM C. MILLER, TRUSTEE | : | |
| Plaintiff(s) | : | |
| v. | : | |
| MONUMENT STREET FUNDING, et al. | : | Adv. No. 07-012 |
| Defendant(s) | : | |

# M E M O R A N D U M

## I. INTRODUCTION

Debtor Viola Trusty filed this chapter 13 bankruptcy case ("the Present Case") on December 6, 2006. The Debtor is the owner of the residential real property located at 311 South Plum Street, Media, PA 19063 ("the Subject Property"). The Subject Property is encumbered by two (2) mortgages in favor of Wachovia Bank of Delaware, N.A. ("Wachovia") and Equity One, Inc. ("Equity One").

Wachovia and Equity One are defendants in Adv. No. 07-012 ("the AP"). In the AP, the Debtor asserts various consumer protection claims against Wachovia, Equity One and several other defendants, including a claim to enforce the Debtor's purported rescission of the mortgages pursuant to the Truth-in-Lending Act, 15 U.S.C. §§1601, et seq. ("TILA"). The AP was removed

-1-

to this court from the Court of Common Pleas, Delaware County ("the CP Court") on January 16, 2007. See 28 U.S.C. §1452(a).

Presently before the court are: (1) Wachovia's Motion to Dismiss Chapter 13 Case and Adversary Proceeding ("the Motion to Dismiss")[1] and (2) Wachovia's Motion for Relief from the Automatic Stay ("the §362 Motion"). A hearing on both motions was held and concluded on October 2, 2007.

For the reasons explained below, I will grant the Motion to Dismiss in part and deny it in part. I will grant the Motion to Dismiss as to the Present Case and deny it as to the AP. I also will treat the Motion to Dismiss as a request for a remand of the AP to the CP Court and grant the motion on that basis. Finally, I will deny §362 Motion as moot.[2]

## II. DISMISSAL OF THE PRESENT CASE

The dispute between the Debtor and the mortgagees has a long, tortuous procedural history. Nevertheless, I can summarize that history as well as the reasons for the dismissal of the Present Case.

---

[1] Technically, the Motion to Dismiss is a "joint motion" filed by Wachovia and another entity, Americap Financial, Inc. ("Americap"). Americap is a defendant in the AP and may have been an originating lender in the transaction that gives rise to the AP. It is not clear whether Americap continues to be a creditor in this case. It is not necessary for me to determine these questions in deciding the Motion to Dismiss. For ease of reference, I will refer only to Wachovia in the balance of this Memorandum.

[2] The §362 Motion is moot because dismissal of the Present Case terminates the automatic stay. Compare 11 U.S.C. §362(c)(1) (the stay of an act against property of the estate terminates when the property is no longer property of the estate) with id. §349(b)(3) (dismissal of case revests property of the estate in the entity in which such property was vested prepetition); see also 11 U.S.C. §362(c)(2) (the stay of all other acts terminates on dismissal of the case).

The Debtor is an elderly woman who is in very poor health.[3] She is also indigent. Her sole source of income is $1,157.00 per month derived from Social Security benefits. This income is insufficient to permit her to make monthly mortgage payments to either Wachovia or Equity One.[4] The Debtor's financial rehabilitation strategy in the Present Case is to employ the AP to reduce or eliminate entirely her liability on the mortgages. Then, to the extent that Wachovia and/or Equity One hold secured claims, she proposes to pay the claims "outside the plan"[5] or through a "reverse mortgage or some other lending device."[6] The Plan also provides for forty-four (44) monthly payments of $20.00 to the Chapter 13 Trustee ("the Trustee"). The Plan

---

[3] Her counsel produced medical evidence that she was unable to attend the October 2, 2007 court hearing due to "physical and mental disabilities." See Exhibit D-1. In prior proceedings, counsel have also represented to the court that her health problems have prevented her from appearing for a discovery deposition.

[4] See Debtor's Schedules I & J (Present Case Docket Entry Nos. 17-18). I may take judicial notice of the dockets and the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998); See also In re Indian Palm Assocs., Ltd., 61 F.3d 197, 205 (3d Cir. 1995). The facts regarding the Debtor's income and expenses are not disputed by the parties.

[5] I understand the Debtor's use of the term "outside the plan" to refer to plans in which the Debtor serves as the disbursing agent (rather than the Chapter 13 Trustee) in making payments on account of a claim that is provided for by the plan. The term "outside the plan" is a misnomer in describing the treatment of any claim that is provided for by a chapter 13 plan as such payments actually are made "pursuant to," "in," or "under" the plan. See In re Perez, 339 B.R. 385, 390 n.4 (Bankr. S.D. Tex. 2006); accord, In re Venuto, 343 B.R. 120, 133 n.21 (Bankr. E.D. Pa. 2006).

[6] See Debtor's Amended Chapter 13 Plan ¶ 3 (Present Case Docket Entry No. 55) ("the Plan"). If the Debtor has any liability on the disputed mortgages, it is difficult to envision how the Debtor can afford to make any payments "outside the plan" or how she could qualify for any type of traditional loan. It is conceivable that the Debtor might be able to obtain a reverse mortgage if the AP resulted in a substantial reduction in the amounts due to Wachovia and Equity One.

calls for the payments to be distributed to the holders of administrative expenses and then, pro rata to the Debtor's general unsecured creditors.[7]

However, the Present Case is not the first bankruptcy case filed by the Debtor. She filed chapter 13 cases in 2003, Bky. No. 03-36701 ("the First Case") and in 2005, Bky. No. 05-31714 ("the Second Case"). In 2004, during the First Case, the Debtor initiated an adversary proceeding, Adv. No. 04-329.[8]

The First Case was dismissed by this court on August 23, 2005 on motion of the Chapter 13 Trustee. Eight (8) days later, the Debtor filed the Second Case. On November 22, 2005, this court dismissed the Second Case as having been filed in bad faith because the Debtor's financial circumstances had not changed materially since the dismissal of the First Case.[9] The Debtor appealed that decision. On August 8, 2006, the District Court affirmed the dismissal of the Second Case.[10]

The Debtor filed the Present Case in this court less than thirteen (13) months after the

---

[7]     Id. ¶¶ 2,4-5.

[8]     As explained below in Part III, Adv. No. 04-329 was later transferred to the CP Court and, after the Present Case was filed, returned to this court when the Debtor removed it from the CP Court pursuant to 28 U.S.C. §1452(a). When it was removed back to this court, it was given a different docket number, Adv. No. 07-012. Thus, Adv. No. 04-329 and Adv. No. 07-012 are the same adversary proceeding. Through the remainder of this Memorandum, I will use the term AP to refer to the adversary proceeding, regardless which docket number was applicable at any given point in time.

[9]     See Second Case Docket Entry No. 29; see also 11 U.S.C. §1307(c); In re Legree, 285 B.R. 615 (Bankr. E.D. Pa. 2002).

[10]    Trusty v. Wachovia Bank of Delaware, N.A., 2006 WL 2321624 (E.D. Pa., August 8, 2006). The district court's order was entered on the bankruptcy court docket on August 16, 2007. See Second Case Docket Entry No. 47.

-4-

dismissal of the Second Case. At the hearing on the Motion to Dismiss, the Debtor's counsel conceded that the Debtor's financial situation had not improved materially since the dismissal of the Second Case.

In light of this history, it is apparent that, by filing the Present Case, the Debtor attempted to accomplish the exact same result that this court (affirmed by the District Court) determined was improper when it dismissed the Second Case – filing another bankruptcy case without a change in circumstances since the dismissal of the First Case. For this reason, I will not consider the issue of the Debtor's good faith de novo. Rather, principles of finality dictate that I respect and follow the prior order of this court dismissing the Second Case, particularly where, as here, the bankruptcy court's decision was affirmed on appeal.[11] Put another way, in circumstances virtually identical to those before me now, it has been judicially determined that this particular debtor did not file her bankruptcy case in good faith. Therefore, it is not appropriate either to revisit the issue of the Debtor's good faith or reevaluate whether the dismissal of the Second Case was correct or fair. In order to accord appropriate respect for the prior orders of this court and the District Court and to protect the integrity of the system, I conclude, without hesitation, that the Present Case should be dismissed as having been filed in bad faith.

Wachovia also requests that the dismissal order include a provision barring the Debtor from refiling another bankruptcy case for a period of one-hundred-eighty (180) days. I agree that relief in addition to dismissal of the case is appropriate.

---

[11] See generally In re Continental Airlines, 279 F.3d 226, 233 (3d Cir.), cert. denied, 537 U.S. 944, 123 S.Ct. 345 (2002) (finding claims barred by entry of prior final order without necessity of distinguishing among the doctrines of claim preclusion, issue preclusion and law of the case). It follows that it is not appropriate to revisit the issue of the Debtor's good faith. Her lack of good faith in virtually identical circumstances has been judicially determined previously.

Since the dismissal of the First Case, two additional cases have been dismissed due to the lack of good faith in filing. It is difficult to envision how the filing of still another bankruptcy case without a positive change in the Debtor's circumstances could be anything but an abuse of the bankruptcy system.[12] This court is not powerless to prevent such abuses.[13] One preventive remedy available to the court is an order that restricts or conditions the right of a debtor to file a new bankruptcy case in the future. Wachovia suggests that the dismissal order bar the Debtor from filing a new bankruptcy case for a period of one-hundred-eighty (180) days.

I do not believe that the suggested temporal limitation adequately addresses the issue. Therefore, I will go further than Wachovia suggests and enter a dismissal order that bars the Debtor from refiling any new bankruptcy case without first obtaining leave of this court.

### III.

### A.

Wachovia also requests that I dismiss the AP. Before analyzing this request, it is helpful to set forth a few key events relating to the AP.

On June 21, 2003, prior to the filing the First Case, Equity One entered judgment by default against the Debtor in a mortgage foreclosure action in the CP Court ("the Foreclosure

---

[12] See generally In re Legree, 285 B.R. at 619 (change in circumstances is an important factor in evaluating good faith of the debtor in case filed after dismissal of prior case(s)).

[13] See, e.g., In re Jacono, 360 B.R. 84, 88 -89 (Bankr. E.D. Pa. 2006) (citing legal authority for power of court to impose conditions on filing of future bankruptcy cases by debtor); see generally Marrama v. Citizens Bank of Mass., 127 S.Ct. 1105, 1111-12 (2007) (referring to the historic power of bankruptcy court to define and remedy a "bad faith" bankruptcy filing).

Action'). The Debtor filed a petition to open the default judgment in the Foreclosure Action on September 22, 2003. Two months later, the Debtor filed the First Case in this court. As explained earlier, see n.8, supra, the AP was filed during the pendency of the First Case.

On February 8, 2006, between the dismissal of the Second Case in November 2005 and the filing of the Present Case in December 2006, the bankruptcy court transferred the AP to the CP Court. Based on the representations of counsel and the CP Court docket entries, it appears that there was no activity in the AP while it was in the CP Court.

On January 16, 2007, about six (6) weeks after filing the Present Case, the Debtor removed the Foreclosure Action and the AP to the bankruptcy court. On March 21, 2007, this court, acting sua sponte, after notice and a hearing, remanded the Foreclosure Action to the CP Court, but retained jurisdiction of the AP.[14]

Since the remand of the Foreclosure Action, the parties have reported to this court that the CP Court granted the Debtor's petition to open judgment. This decision permits the Debtor to assert all of her available defenses against Equity One in the Foreclosure Action, including the TILA rescission claim she has asserted in the AP. See, e.g., In re Randall, 358 B.R. 145 (Bankr. E.D. Pa. 2006) (TILA rescission, if valid, is a defense in a mortgage foreclosure action in

---

[14] The remand was designed to bring to a conclusion, in the proper court, the litigation on the Debtor's petition to open the judgment in the Foreclosure Action. Meanwhile, the court retained jurisdiction of the AP because the outcome of the petition to open judgment seemed likely to be a significant factor in the decision whether this court should retain jurisdiction over the AP. If the CP Court declined to open the foreclosure judgment, the Rooker-Feldman doctrine dictated that the AP be remanded under 11 U.S.C. §1452(b) due to lack of federal jurisdiction. See, e.g., In re Stuart, 367 B.R. 541 (Bankr. E.D. Pa. 2007). If the judgment were opened, no jurisdictional obstacle existed to this court's retention of the AP. When the decision was made to retain jurisdiction of the AP, no party had requested dismissal of the main bankruptcy case based on the Debtor's lack of good faith.

Pennsylvania).

One final fact is relevant. To date, Wachovia has not initiated foreclosure proceedings against the Debtor. Therefore, if Wachovia brings a foreclosure action against the Debtor in the future, she will be free to assert her TILA rescission defense (and any other defenses available to her) in that action as well.

**B.**

In support of its request for dismissal, Wachovia invokes the accepted legal principle that dismissal of a debtor's main bankruptcy case will result ordinarily in the dismissal of all pending adversary cases. See In re Smith, 866 F.2d 576 (3rd Cir. 1989); In re Stardust Inn, Inc., 70 B.R. 888 (Bankr. E.D. Pa. 1987); accord, In re Porges, 44 F.3d 159 (2d Cir. 1995). However, there are exceptions to the general rule. The court has discretion to retain jurisdiction of an adversary proceeding after dismissal of the main case based on considerations of: (1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related legal issues involved. In re Smith, 866 F.2d at 580.

In this case, a colorable argument exists for the retention of jurisdiction. The AP was initiated in this court in 2004. Before it was transferred to the CP Court in February 2006, most of the pretrial process in the AP was complete.[15] It does not appear that the matter advanced any closer to trial during the time period that the AP was in the CP Court prior to its removal back to this court in December 2006. Thus, if the AP were remanded again to the CP Court, the matter

---

[15] The docket in Adv. 04-329 reflects that the discovery deadline had expired and the parties' joint pretrial statement was overdue as of the date of the transfer to the CP Court.

will be in its fourth court, having been transferred three (3) times. This is an inconvenience to the parties and perhaps borders on being "Dickensian."[16] In these circumstances, it is not unreasonable for this court (the court of origin) to consider retaining jurisdiction.

Nevertheless, I decline to exercise my discretion to retain jurisdiction of the AP. The only reason the AP is back in this court is because it is related to the Present Case, a case that was not filed in good faith. It would be inappropriate to reward the Debtor's questionable conduct in filing this case by permitting her to move the forum for resolution of the AP. In addition, this question (like the issue of the debtor's good faith) is essentially the same as an issue resolved in earlier proceedings in this court. After the dismissal of the Second Case, in late 2005, the court had to decide whether to retain jurisdiction of the AP, which had been pending in the court since March 2004. At that time, Judge Carey determined that the CP Court was the appropriate forum. Now that the Present Case is being dismissed, the posture of the AP is virtually identical as in late 2005. For the reasons expressed in Part II, I consider it appropriate to resolve the status of the AP in the same manner as Judge Carey did, by transferring the AP to the CP Court.

This reasoning also leads me to decline Wachovia's request that the AP be dismissed outright rather than remanded to the CP Court. To the extent the Debtor's rights are circumscribed by prior rulings of the court, so too, must Wachovia's rights.

Remand rather than dismissal is appropriate for several other reasons as well.

---

[16] See Faraci v. Grace, 331 F.Supp.2d 362, 362 (E.D. Pa. 2004) (referring to litigation that had come before the court for a third time as "Dickensian"); see also Hartman v. Moore, 547 U.S. 250, 256-257 n.5, 126 S.Ct. 1695, 1701 - 1702 n.5 (2006) (citing C. Dickens, Bleak House 85 (1853)).

First, Wachovia fails to articulate any reason why dismissal of the AP would more appropriate than remand. It argues only that the dismissal of the main bankruptcy case eliminates the court's jurisdiction over the AP, thereby requiring dismissal. This argument overlooks the fact that the AP existed prior to the filing of the Present Case and is in this court only because it was removed from the CP Court.

Second, remand is supported by the principle of economy to the parties and the courts. If the AP is remanded, it can be consolidated for trial with the Foreclosure Action of Equity One and any foreclosure action that Wachovia might initiate. In these circumstances, I see no valid purpose served in compelling the Debtor to prepare, file and serve a new complaint.

Finally, there also may be statute of limitations consequences arising from dismissal. It is not self-evident to me that all of the relief to which the Debtor may be entitled in her affirmative action (presuming her consumer protection claims are valid) are available to her if her claims are raised in a purely defensive manner in a mortgage foreclosure action. I would consider it inequitable for any meritorious claims or remedies to be time-barred simply because the AP has bounced back and forth between the CP Court and the bankruptcy court over the past three-and-one-half years.

Therefore, consistent with the broad discretion accorded to the bankruptcy court under 28 U.S.C. §1452(b), the AP will be remanded to the CP Court.[17]

---

[17] See, e.g., Smith v. Wal-Mart Stores, Inc., 305 F.Supp.2d 652, 658 n.9 (S.D. Miss. 2003) (court may act sua sponte to remand case under 28 U.S.C. 1452(b)); Scherer v. Carroll, 150 B.R. 549, 552 (D. Vt. 1993) (same); In re Potter, 2007 WL 1672181, *8 n. 11 (Bankr. D.N.M. June 7, 2007) (same).

## IV.

For the reasons set forth above, the Motion to Dismiss will be granted in part and denied in part.  The §362 Motion will be denied as moot.

Date:   **November 5, 2007**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: **VIOLA TRUSTY** | : | |
| | : | **Chapter 13** |
| Debtor(s) | : | |
| | : | Bky. No. 06-15767ELF |
| | : | |
| **VIOLA TRUSTY** | : | |
| **WILLIAM C. MILLER, TRUSTEE** | : | |
| | : | |
| Plaintiff(s) | : | |
| | : | |
| v. | : | |
| | : | |
| **MONUMENT STREET FUNDING, et al.** | : | Adv. No. 07-012 |
| | : | |
| Defendant(s) | : | |

# O R D E R

**AND NOW**, upon consideration of the Joint Motion to Dismiss Chapter 13 Case and Adversary Proceeding ("the Motion to Dismiss") and Wachovia's Motion for Relief from the Automatic Stay ("the §362 Motion") and the Debtor's response thereto, and after a hearing, it is hereby **ORDERED** that:

1. The Motion to Dismiss in Bky. No. 06-15767ELF ("the Main Case") is **GRANTED**.

2. The §362 Motion is **DENIED** as moot.

3. The Motion to Dismiss in Adv. No. 07-012 ("the AP") is **DENIED**.

4. The AP is **REMANDED** to the Court of Common Pleas, Delaware County.

5. Unless this Order is stayed by an Order of the U.S. District Court, the Clerk shall mail a certified copy of the Remand Order to the Prothonotary, Court of Common Pleas, Philadelphia County on **November 16, 2007.**

6.  The Clerk shall docket this order on the docket of both the Main Case and the AP.

Date:   **November 5, 2007**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**